AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>VINCENT ELROY SIMS<br><br>*Defendant(s)* | Case No. 19-8238-WM |

FILED BY _____ D.C.

JUN 20 2019

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. – W.P.B.

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 29, 2019__ in the county of __Palm Beach__ in the __Southern__ District of __Florida__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 18, United States Code, Sections 922(g)(1) and 924(e) | Possession of a Firearm and Ammunition by a Prohibited Person - Convicted Felon / Armed Career Criminal. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Alan B. Oxley, Special Agent / ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __06/20/2019__

_____
*Judge's signature*

City and state: __West Palm Beach, Florida__      Hon. William Matthewman, US Magistrate Judge
*Printed name and title*

# AFFIDAVIT

1. Alan B. Oxley, being first duly sworn, hereby deposes and says:

2. That I serve as a Senior Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives (ATF), of the United States Department of Justice, and have been so employed since 1999. Prior to this, I was a border patrol agent, police detective and a deputy sheriff for a combined 10 years. During my tenure with ATF, I have received specialized training regarding the investigation and enforcement of Federal firearms violations as well as other criminal violations. I have been involved in hundreds of investigations regarding the unlawful possession of firearms.

3. This affidavit is based upon my own knowledge as well as information provided to me by other law enforcement officers. This affidavit does not set forth every fact known to me regarding the investigation but only those facts necessary to establish probable cause to arrest VINCENT ELROY SIMS, (hereinafter "SIMS") did possess a firearm as a prohibited person – convicted felon, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(e). Ala

4. On Monday, April 29, 2019, at approximately 1:56 am, Palm Beach Sheriff's Office (PBSO) Deputy D. Chahine was patrolling the area of Hypoluxo Road near Interstate Highway 95 in Lantana, Florida. Deputy Chahine was driving a marked PBSO vehicle and wearing his full PBSO uniform. Deputy Chahine knows this area to be a high-crime area where street-level narcotics violations frequently occur. At that time, Deputy Chahine saw a white Chevrolet Tahoe (FL tag IYTP98) driving at a high rate of speed. The Tahoe passed Deputy Chahine's vehicle and abruptly slowed and entered the parking

1

lot of a RaceTrac fuel station at 1450 Hypoluxo Road. When the vehicle passed, Deputy Chahine observed that the vehicle's windows were dark-tinted.

5. Deputy Chahine parked his patrol vehicle across from the RaceTrac fuel station where he observed a heavy-set black male, later identified as SIMS, exit the driver's seat and enter the store. Soon after, SIMS exited the store and reentered the white Tahoe. Driving the Tahoe, SIMS then exited the RaceTrac store from the southwest exit of the plaza. Deputy Chahine witnessed SIMS fail to make a complete stop at the stop sign before entering Seacrest Boulevard travelling southbound.

6. Deputy Chahine attempted to catch up to SIMS to initiate a traffic stop. As he did so, SIMS made an abrupt left turn onto Loquat Tree Drive, which is a residential street. SIMS then made a right turn onto Old Spanish Trail, which loops back to Seacrest Boulevard. Deputy Chahine witnessed SIMS again fail to stop at the stop sign as he turned south onto Seacrest Blvd from Old Spanish Trail.

7. Deputy Chahine then initiated a traffic stop of SIMS. Deputy Chahine noted that SIMS's behavior preceding the traffic stop was suspicious and seemingly evasive. Deputy Chahine also noted that the traffic stop location is near two locations where he had responded to shootings in the previous two weeks. As Deputy Chahine approached SIMS's vehicle, he observed SIMS making furtive movements with his hands towards the floorboard of the driver's seat area. Deputy Chahine also observed SIMS making movements with his hands towards the center console area of the vehicle. Deputy Chahine was able to see SIMS's right elbow moving up and down in the area of the center console. It was readily apparent that SIMS was putting something into or removing something from the console. As Deputy Chahine neared SIMS's vehicle,

2

SIMS reached both hands out of the window. Deputy Chahine observed that SIMS was the only occupant of the vehicle. SIMS produced a Florida driver's license in his name. While speaking with Deputy Chahine, SIMS appeared to be extremely nervous. Deputy Chahine noted that SIMS's hands and speech were shaky and he appeared to be sweating profusely.

8. Deputy Chahine asked SIMS about his destination and SIMS indicated that he was travelling home. Deputy Chahine asked why he had made an abrupt turn when his patrol car approached and SIMS explained that he just likes driving through the neighborhood. During their conversation, Deputy Chahine noticed that SIMS continually moved his right hand to the top of the center console. When he asked SIMS for vehicle paperwork, he noticed SIMS's hand shaking as it was rested on the center console. Deputy Chahine also observed that SIMS had various bulges in his pants pockets.

9. Based on SIMS's suspicious behavior and the high-crime nature of the area, Deputy Chahine asked SIMS to exit the vehicle where he conducted a pat-down of SIMS. Deputy Chahine also requested a narcotics canine to respond while he verified SIMS' driver's license and checked him in the National Criminal Information System (NCIC) for wants/warrants. Sgt. Anderson (#4974) soon responded with his canine who he worked around SIMS's vehicle. Sgt. Anderson's canine then alerted to narcotics, but could not pinpoint a location because all of the windows were open.

10. During this time, SIMS became very anxious and seemed to be very concerned. Deputy Chahine then returned to the vehicle to conduct a frisk of the immediate area where he had seen SIMS making the furtive movements. Upon opening the center console, Deputy Chahine immediately saw the handle of a handgun. The handgun was next to a zippered

3

back that was partially open and Deputy Chahine could see hypodermic needles inside. Deputy Chahine then handcuffed SIMS.

11. Deputy Chahine returned to the vehicle to retrieve the firearm and drug evidence. The firearm was a Springfield, model XDS, .45 auto caliber pistol. The firearm was loaded and in a black concealed-carry holster.

12. When deputy Chahine opened the zippered bag in which he had observed the hypodermic needles, he found an abundance of narcotics and related equipment. The bag contained 27.8 g of powder and crack cocaine, 82 MDMA pills (23.8 g), 59 Oxycodone pills (38 g), 13 Adderall pills (10.5 g), 1 green oxycodone pill, 2.7 g of powdered heroin, 6 hydromorphone pills, 4 tadalifil pills, 4 packages of suboxone (8mg strips), 8 hypodermic needles, 1 glass pipe with burnt residue on the end of the pipe, a large baggy containing numerous clear individual zip top baggies, and 3 folded twenty-dollar bills (U.S. currency). Three digital scales were also found in the center console. There was a white residue on one the scales. Deputy Chahine also found a medication bottle in the zippered pouch in the name of Vincent SIMS. This bottle contained 133 alprazolam pills. Deputy Chahine knows from his experience that the quantities and packaging of these controlled substances indicates that these are product for trafficking of controlled substances.

13. Deputy Chahine searched SIMS's wallet and found a large amount of cash. The various denominations of U.S. Currency was folded and divided by denomination. SIMS had $2,655.00 in cash in his wallet and another $60.00 in the zippered pouch for a total of $2,715.00. Deputy Chahine knows from his experience that it is common for drug dealers to carry large amounts of cash, which they sometimes fold and divide by denomination.

14. Deputy Chahine read SIMS his *Miranda* warnings and SIMS advised that he understood them. He questioned him about his home address and where he was driving. Later, Sgt. Lin arrived and spoke briefly with SIMS. SIMS admitted to Sgt. Lin that he is a "convicted felon and had served time in state and federal time." When speaking about the narcotics found in his vehicle, SIMS advised that he can "get it on any corner and gets it from individuals." SIMS told Sgt. Lin that the vehicle was a rental vehicle and that he put the excessive window tinting on himself.

15. Further investigation of SIMS's criminal history revealed several felony convictions in Palm Beach County, including: (i) Aggravated Battery (88-11629CFA02), (ii) Shooting into Occupied Vehicle (88-11629CFA02), (iii) Burglary of a Conveyance (90-693CFA02), (iv) Grand Theft (90-693CFA02), (v) Resisting Arrest with Violence (90-693CFA02), and (vi) Robbery with Firearm (90-693CFA02). SIMMS has also been convicted federally of possession of a firearm by a prohibited person – convicted felon in the Southern District of Florida, upon which he was deemed an armed career criminal.

16. Special Agent Oxley has had specialized training in the identification of firearms and ammunition and determination of their origins of manufacture. SA Oxley has testified hundreds of times as an expert in the identification, classification and interstate nexus of firearms. SA Oxley examined a description of SIMS's firearm on May 8, 2019. Based on SA Oxley's training and experience, he determined that SIMS's firearm was not manufactured in the State of Florida and did, therefore, travel in interstate commerce.

FURTHER, YOUR AFFIANT SAYETH NAUGHT.

_____
Alan B. Oxley
Special Agent, ATF

SWORN TO AND SUBSCRIBED BEFORE
ME THIS 20th DAY OF JUNE 2019, AT
WEST PALM BEACH, FLORIDA.

_____
HONORABLE WILLIAM MATTHEWMAN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF FLORIDA

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

### CASE NO. 19-8238-WM

**Defendants' Name:** <u>VINCENT ELROY SIMS</u>

| COUNTS | VIOLATION | U.S. CODE | MAX. PENALTY |
|---|---|---|---|
| | Possession of a Firearm by Convicted Felon | 18 USC §§ 922(g)(1) and 924(e) | Life in prison<br>15 years man/min<br>$250,000 fine<br>SR: 5 years<br>$100 Special Assessment |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

No.   19-MJ-8238-WM

UNITED STATES OF AMERICA

vs.

VINCENT ELROY SIMS,

        Defendant.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to October 14, 2003?   _____ Yes   __X__ No

2. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to September 1, 2007?   _____ Yes   __X__ No

        Respectfully submitted,

        ARIANA FAJARDO ORSHAN
        UNITED STATES ATTORNEY

BY: _____
        ADAM C. McMICHAEL
        ASSISTANT UNITED STATES ATTORNEY
        Florida Bar No. 0772321
        TEL (561) 820-8711